May it please the Court, my name is Thad Geyer, I'm attorney for Mr. Brunson. I would like to reserve three minutes of my ten minutes for rebuttal. The district court became the first court in the United States with a reported case to ever construe the term, whichever is greater, that appears in contingency fee contracts that have a statutory fee provision do not refer to the greater of the contingency fee amount or to the statutory fee amount. No case has ever done that. And as we cited in our brief, all of the courts, including the 9th Circuit in Pony v. City of Los Angeles, 9th Circuit, 2006, and the other cases we cite in the appellant's brief, page 42 at note 20, all involve whichever is greater, the statutory fees or the contingency fees. Can I ask you just a bottom line question? If we were to rule in your favor on this particular component of the case, what would happen? What would your client get? He would get $1.2 million. So just his one-third share of the, what, was it $3.8 million? That's what your client is trying to capture back? Yes. Got it. Sorry. Counsel, I have a slightly different question, which I also intend to ask opposing counsel. How is it that a dispute between your client and his former lawyers is here before us? The lawyer, the Lambert firm, is not a party. They're listed here as an appellee. They filed a brief, but they didn't intervene in this suit. I'm not sure, Your Honor. Well, you took an appeal from an ad firm, an adverse judgment, in favor of somebody who wasn't a party. We took an appeal as to all parties. Well, that's great, as to the parties. The Lambert firm is not a party. This is a contract dispute between your client and his former attorneys. That was not the subject of the False Claims Act. And it might have been an easy adjunct to get in if they had made him a party and intervened, because it certainly seems related to what the district court had before it. The district court, Your Honor, specifically found that the settlement agreement with the United States gave the district court continuing jurisdiction to adjudicate any fee dispute between Mr. Lambert and his attorney. So that was completely reserved in the agreements. And other than Your Honor asking that question, no one has ever asked that question. No one has ever argued that. But can I just – the reason I think – the reason I was asking the question I was, is that this is a fight over who should get the money that the district court itself awarded, right? Yes. I mean, that's why I think the district court probably thought, okay, maybe I need to step in, because you're saying that, hey, district court, that $3.8 million, I'm entitled to a share of it. Obviously, your opponent is saying, no, it's all ours. And it seems like that would kind of go hand in hand with whatever the district court's fee award. It did. And we filed, of course. We're here on a specific declaratory relief filing. So we actually filed pleadings, put this before the court. The court accepted the pleadings. The court accepted the taking the – to adjudicate the declaratory relief, set a schedule for the parties to appear before the court to submit papers. So we're here on a specific petition for declaratory relief. And I gathered that – was it Bechtel that paid the money? And they've already paid it to the firm? Yes. And so they're just holding it in escrow until this dispute is settled? The 1.2, as well as a disputed amount of whatever is a reasonable fee amount, it's the 2.3 or so is in a trust account now in the law firm. Why is the larger sum sitting there? Why isn't it just the 1.2 that your client is after? Because we had two claims for relief in two motions. One is just under the contract we should get the 1.2 million, which is his share, and also that the fees themselves were excessive and that the court needed to decide irrespective of how the 1.2 did. If you look at the total amount of fees. That's what I – okay, that's why I asked the first question I did. Because I did not understand why there was even a second issue in play here. But if we were to rule in your client's favor on this first issue, I gather that there's no contention that the overall fee would be unreasonable at that point, right? Or is there some additional argument you've got that you should capture back even more money than the 1.2? That's why I asked the first question I did. I wanted to know in total what is it that you want to get out of this in terms of relief for your client? Well, what I'm realistically aiming to get out of this is the 1.2. Okay. It's a much steeper climb when you're contending that a district court abuses discretion in setting the amount of a statute. Yeah, I mean, if all they were to get was the 33 and a third, I just don't – like, how could that be unreasonable? Yes, it would be difficult to make. Of course, the contract we have here, this retainer contract, was drafted by Mr. Lambert's law firm. And as we cited Louisiana law, we cited a reported Fifth Circuit case of Womble, is that under Louisiana law, any ambiguity in a contingency contract is construed against a lawyer. What the lawyer here, the law firm, is saying is that we want both statutory fees and contingency fees, and how easy it would have simply been to write a retainer that says we get both or we get to elect or we get either. You think lawyers would know better, right, than to draft ambiguous contracts, but obviously not. Well, I think lawyers do know better. We're just very skeptical of the argument. This is particular – this skepticism is especially strong when you consider, and of course the district judge ignored this as well as the Lambert firm's brief ignored this, is that Ms. Jeffcott, who was with the firm at the time, filed a declaration, and her declaration says, I told, I told Mr. – I told Mr. Brunson that the $4 million that the attorney fee portion of that was going to essentially go into the amount recovered and Lambert's firm's 33 and a third would come out of that. So no matter how you look at it, so this is an extremely unique construction. The district court was able to reach that really for five reasons. Number one is the district court did not mention the rule of construction, which is how ambiguity is construed against a law firm. Number two, the district court applied a nonexistent rule of grammar that gives some significance to whether or not a word is uppercase or lowercase, and there's – without any citation. We can find no citations whatsoever. Number three, the district court applied public policy, saying that the more money that lawyers – that these lawyers get, then the more available there are going to be lawyers, which is then extraneous to what everybody agrees. It's an issue of law, and you're just looking to the objective language of the contract. But you would admit that if – I mean, there really should have been a comma after the word herein, right? I mean, if you were going to do this in a grammatically correct way, according to how you're interpreting it, there would have been a comma there. You acknowledge that, right? I must say that that was my initial feeling. And as counsel pointed out, actually, when I typed it up, I put the comma in there. But it turns out that I'm completely wrong, that under the rules of grammar, that comma would have made things difficult for us. It's precisely because there is no comma. The only comma that comes in is the comma – the comma whichever is greater. The difficult – one of the big difficulties with the cases is there is nothing in the retainer agreement that says that the Lambert firm even gets the statutory fees. It says that statutory fees or costs will be deducted from the gross amount. They're arguing that you decide whichever one you want. But that's not what the contract says. The contract says whichever is the greater will be deducted from the gross amount. There's no discretion there. It has to be deducted. But once deducted as part of the calculation, there is absolutely nothing in the retainer agreement that says that those fees then go to the Lambert firm. There's nothing in there. And the case law of this circuit is uniform, that absent a clear contract, as well as Supreme Court law, that gives the lawyer the right to have both, that absent that, then the lawyer does not get the awarded fees. And any awarded fees, they're counted then as an offset against the contingency. The Ninth Circuit is a leader in this area with Venegas v. Skaggs, 1989, Hammer v. Rios, Ninth Circuit, 1985, Bates v. Krutenko in 1996. You're down to about eight seconds. My guess is you'd like to reserve some time. I wanted to, but it looks like I have three seconds. No, we'll give you time to respond. Thank you so much. You get to say what you need to say. All right. Your Honors, Hugh Lambert on behalf of my firm, the Lambert firm, and the Watts firm, and Dick Iman's firm, all of whom participated in this False Claims Act case, which lasted for four and a half years. And it's interesting that the argument just before mine today was about a False Claims Act case, and it kind of points out how difficult they are, and they are. We worked hand-in-glove with the United States Attorney's Office, Mr. Tornabini, in Seattle. I'm sorry, he's in Richland and also in – and I've been there many times. Spokane. How about that? Yeah, Spokane. That'll work. And then we went to D.C. and worked with the Justice Department there and spent eight lawyers, four and a half years, and came out with what I thought was a magnificent result, and so did the court, $125 million is nothing to sneeze at. And what happened was amazing. All three relators, Dr. Thomas Situs, who's here today, and Donna Bushy, and also Mr. Brunson, who's also here today, were all pretty happy with my firm's performance, and we were lead in this case. And along comes the money, and when the money shows up, as pointed out in both of the orders by Judge Shea, there is all of a sudden an argument, and it's an argument that was disturbing to me because, first of all, I wondered why my client, Mr. Brunson, was listening to Mr. Guyer and not even listening to the explanation that you asked, you in particular, Judge Watford, that the how is it supposed to be if you win? The construction is in a record document. There's several pages, 185, 188, has more discussion in it, Judge Shea, where he points out, or I point out to him, that if we did it the way the contract actually specified, you'd add the $4 million, which was attorney's fees and costs, gross, to $25 million. You'd get $29 million. And you would take a third, you'd take 33 and a third of the $29 million amount? Yeah. That makes no sense. That's what the judge said. Right. You've never drafted a contingency fee agreement that says that, right? Well, what we did was, in the case of the attorney's fees and cost provision, whichever is greater, the reason that's there is because we've handled a lot of false claims cases and mass tort cases over the years, and sometimes they don't work out very well. And when they end up in a settlement, sometimes a cost of defense settlement, the costs can be much greater than the fee. I want to make sure I understand what you want. You want one-third of the $25 million that came from the government, the 20% of the $125 million? Correct. No. Yeah, 20% of that. One-third of the $25 million plus the $4 million that was obtained in settlement from Bechtel. Well, actually, it's $3,800,000. It's roughly four. It gives you something over $12 million in fees. Correct. That's what you're asking for. That's correct. Okay. And that's what the district court found. Okay. And Brunson is suggesting that you should add the $4 million to the $25, come up with $29, and that you'd end up with $9.66. Is that about right? Right. Plus, then what you would do is back out from the attorney's fees. I'm totally confused. I thought what was going on here was that you're saying we drafted this so we got one-third of the $25 plus 100% of whatever the district court awarded in attorney's fees under the statute. We drafted it, Your Honor, so that we would get the, as Emily Jeffcott pointed out, her interpretation was you add it to the gross based on the contract language. In other words, you add it to the 20%, 25 plus 4, and then do the math, which includes subtracting that from what the relators get and then adding to it. I'm sorry, subtracting from the relators portion the greater of either the attorney's fees or cost that we get under the supplemental agreement or under the statutory provision. I have the numbers. But the way that you calculate it, you get 100% of the roughly $4 million that came from Bechtel. That's why I pointed, Your Honor, to the language record document, and it's of the judge's hearing on the 21st, number 288, ER-288, because that's what the judge said he thought the interpretation of the contract was based on his reading of the language, which included the comma, his taking of the context of the 33 and a third percent in our negotiations with the clients over how that should work because we said it was going to be a contingency fee on the main amount, and we said we would receive then the greater of the attorney's fees or cost, whatever it came out to be, and that's the way the judge interpreted it. And he said, so what you would be entitled to would be the one-third of the $25 million and the attorney's fees. And then he went through. Why isn't the amount paid by Bechtel just sort of a credit? I'm sorry? Why isn't the amount paid by Bechtel in settlement, the roughly $4 million, just a credit towards whatever you're owed under the contract? Well, I guess because the way I'm going to cut you down to about eight and a third million, I think. Your Honor, what happens is, is that the ‑‑ this is the way we read the QUITOM case law, is that the recovery of the QUITOM relators comes from the amount of money that the government gets. In other words, the government got $125 million. The government then gets their share of that, and the relators get 20 percent. So that's the $25 million. The other $4 million, which includes $154,000 in costs, comes from a negotiation between our firm and the defendants. The government's not ‑‑ Right. It's a sidebar. They're not a recipient of that. And so that leads to our receiving, or at least the relators receiving, the benefit of the $154,000. That was the cost. There was no risk to them whatsoever. And we get the attorney's fees. That's the way the judge saw it. And he saw it because of not only the contract language, but the context of the negotiations, which included a second agreement, a second contractual agreement, between the relators themselves, where they all said we get a third each. And the language in that document also says after a deduction of attorney's fees and costs. So that whole thing taken together led to after a hearing before Judge Shea, his ruling, we paid the $5,555,055 to each of the relators. Good question, Judge Watford, why we had to agree to an escrow of over $2 million. We did because we wanted the money to get dispersed. We were finished with this case. We'd done our work for four and a half years. We had the judge rule in our favor in terms of the argument brought up by Mr. Geyer. Why Mr. Geyer was involved, I don't know, except to say that he has been very diligent in his efforts to recover part of that $4 million because he gets a third of it. He has no risk. Yeah, I mean, I got to say, I don't think your reading of the contract is right at all. It doesn't make any sense to me. What I read this as saying is that you're going to get one-third of the settlement amount, and you're going to calculate that one-third amount before any costs are deducted from the $25 million pot. So you get that full one-third, but it says you're not going to get any portion of the statutory attorney's fees award unless that amount ends up being greater than the settlement. And so what I understood, and I'm going to ask when he comes back up, I understood your opponent to say he doesn't think you should be entitled to any portion of that $3.8 million, but since he's the only one of the three relators who contests it, he's just going to get his one-third share of that $3.8 million. You're going to get to keep the rest because the other two relators didn't bother to challenge it. Well, Your Honor, the other two relators understood the judge's ruling and also understood our position with regard to the supplemental agreement which we negotiated and also our position with regard to the attorney's fees. In other words, the attorney's fees are what they say they are. They're attorney's fees. They don't come from the relator's recovery to the government. That recovery is separate from the supplemental agreement and the statutory fee, which includes the return of cost, which is to the benefit of the clients. They paid none. Right. And the attorney's fees goes to us as sort of a we didn't charge any attorney's fees for four and a half years. The relator's contracts with their lawyers all included upfront costs, a contingency fee, and in some cases an hourly fee. So the way I understood our relationship with our clients, and they understood it as well, the other two that didn't join, was that we were entitled to our portion of the recovery from the government. They got the benefit of the cost that we got back, and we got the hourly rate that we got from. Don't misunderstand me. There's nothing wrong with striking that agreement. And, in fact, in most of the 1983-type litigation I've seen, the lawyer contracts to get both a third of whatever recovery, whether it's judgment or settlement, plus whatever court awarded the fees. And the lawyer says I get 100 percent of that for the exact reasons you just described. I'm just saying that's not what I read this agreement to provide for. You could have drafted it that way, but for whatever reason, I just don't think you did. Well, Your Honor, with due respect. I know you disagree. Let me follow on that. I mean, I've been trying really hard to understand this, and so I'm just going to read the language. Sure. Client hereby authorizes attorneys to retain as compensation for the legal services, number one. I added the number one. Number one, no more than and no less than 33 percent of such amount calculated prior to any deduction for costs and expenses as outlined herein, or, number two, I added the number two, the amount of attorney's fees awarded by the court, whichever is greater. Well, as to the roughly $4 million, were those attorney's fees awarded by the court within the meaning of this agreement? They were negotiated between us and the defendants. So how do they fit within this agreement at all? I'm not sure, Your Honor, but I can say that in terms of the way I read the paragraph you just read. That's the key paragraph, right? It is. It definitely is. And it also – okay. It says, From the gross amount of settlement, judgment, claims, or payment received by the attorney's fees on behalf of client as a result of the efforts made by the attorney in this matter, client hereby authorizes to retain as compensation for their legal services, no more no less than 33 and a third percent of any such amount prior to any deduction for costs and expenses as outlined herein or the amount of attorney's fees awarded by the court, whichever is greater. In other words, one of those two things gets deducted from the relator's portion. When you do it that way, the relators get $1.3 million less. Wait a minute. Okay. Yeah, I get it. One of those two things gets deducted. Right. And I gather there's no attorney's fees awarded by the court under your construction because you just told me that roughly $4 million was not awarded by the court. It was a separate negotiation. Right. So apparently there's nothing awarded by the court that's triggered by this. Is that correct? I don't think so, Your Honor, because the court – You don't think so? Am I correct or not correct? I'm trying to figure out the double negatives here. Well, I know, and it's difficult because actually – I'm trying to figure out whether you agree with me or not. Do you agree with me that there's nothing awarded by the court? No, I don't. Okay. What was awarded by the court? What the court did was went through in the order regarding the reasonableness of fees and did a load start factor, and that's record document ER1 and so on through. And in the load start factor, it awarded or determined an award of $104,000 less than the attorney's fees portion of the contractual agreement that was reached between us and the defendants. In other words, at the end of that – You stood to get more under the 33% clause than you did if the district court awarded you statutory fees. You had two measures here, and you said we're going to get the greater of one or two. One of them is we get 33% of anything you collect. Anything we collect for you, we get one-third of it. Or we get the fees awarded by the court, whichever one is greater. And the fees that could be awarded by the court turned out to be less than the fees that you would get applying the 33%. Judge Bivey, I don't think that's correct. What I think that – and this is the difficulty in the wording – and agreed it's difficult. That's the reason why the judge went through his analysis of what does the document look like from a – strictly the standpoint of where the commas are and so on. And then he went through another review over the context of the agreement. He made factual findings, which are only, I think, subject to review for clear error, because it's not a – So what is the amount of attorney's fees that the court thought that it could award? These are fees that would be awarded under the statute, right? Correct. Okay. How much did the district court – how much did you claim before the district court? What did the district court think it could award? The district court – And they should have nothing to do with a 33% factor. Okay. This is ours, Lodestar. Right. And the district court awarded all but $104,500. No, give me – what's the bottom line? Well, I'm looking for it, Your Honor. Well, give me a round figure. I thought it was 3.8 or roughly thereabouts. Okay. Okay. The court, therefore, finds that this amount of statutory fees is appropriate under the Lodestar approach, $3 million. Correct. Okay. But you were entitled – you were going to get 33% of $25 million, weren't you? Isn't that 8.33? Isn't that – Yes. But then – Okay. But – No, no. Just one second, Your Honor. The total gross amount is $29. So if you take a third of $29 – Right, right. Let me set the $4 million aside for one minute. So at least without even thinking about what Bechtel contributed to this, you were going to start with we're either going to get a little less than $4 million because that's what the district court could award under the statute, or we can get one-third of $25 million. Now, which of those are you going to choose? Well, obviously, if that was the choice – You would take the 33%. That's correct. Okay. That's not what the contract says, I don't believe, Your Honor, because – Well, I think – I don't know how you get anything different out of this. Well – No. So, okay. So now the question is, what do we do with the $4 million? Now, what you want to do is say, well, we get all the $4 million because that's what Bechtel was giving us for attorneys' fees. And therefore, we get one-third of the $25 million. Correct. That's 8.33, roughly 8.33, plus the $4 million, which gives us something in excess of $12 million in fees. Correct, Your Honor. That's what you want. Correct. Why isn't the $4 million in settlement from Bechtel part of the gross amount of any settlement, judgment, claim, and or payment received by attorneys? And therefore, you add the $4 million to the $25 million to say, we did good work for you. We recovered $29 million for you. $25 million came through the settlement with the government, which the government then gave us 20%, or $25 million. And we got another $4 million from Bechtel on the side. We got $29 million in total. We apply the 33% to that, and that gives us just under $10 million, about 9.66. Rough numbers. I understand what you're saying, Your Honor, but you're ignoring the next paragraph in the contract, which says from after that calculation, which is when you do the gross calculation. And I have that paper here someplace, and I just need to find it. You want to account for costs and expenses. Yet you deduct from the client's portion either the attorney's fees or costs, whichever is greater. And the greater amount of that is the attorney's fees, which is the 3.8. When you back that out, then the clients get $1,300,000 less. And I need it. Here it is. Here it is. In other words, Your Honor, if you take the $29 million and you subtract from it the gross, which is $9,666,666, then the balance is $19,333,333.33. Then you subtract the attorney's fees, because it's the greater of attorney's fees and costs, which is what the contract says when the comma is in the correct place. I don't think that makes any sense at all. Well, then you get to $15,488,099.8. And that's what you're looking for is $15 million? No. What we did was the judge said, Judge Shea said, he didn't think that that interpretation of the contract was correct, which is why I go back to the literal interpretation from the standpoint of where commas are. Then he looked at it in context. How much do you think you're entitled to total in fees? Exactly what the district court said. And remind me what the district court said. Well, $12,178,566.54, less $104,000. The $104,000 being costs and expenses? No, that was the judge's analysis of the load star. Oh, okay. And it was some misreported attorney's fees hours. So that goes back to the other factor that the judge mentioned over and over, Judge Shea, in both orders that he rendered, and that is that we took a tremendous risk. Had we been unable to resolve this case by settlement, our firm would have probably been subject to double-digit millions of dollars in costs from the attorneys that represented Bechtel and URS over a period of four and a half years. That was not in the contract as a liability on the part of the clients. They didn't want it. We understood that, and that's why it was one-third. And then in addition to the one-third, as the judge pointed out, normally there would be a 40% or 50% contingency fee contract. We didn't have that. We had the provision that we would then recover a third of the gross amount, which is a $29 million, and then we would get a credit or subtract from that the greater of either attorney's fees and cost. It didn't work out so that there was a great amount of cost in the case. So when I discussed this matter with the relators, all three of them who were represented, I explained to them we weren't going to do it that way. We were going to do it as the attorney's fees on the amount received by the government, in other words $125 million, less 20%, and then they were going to get credit for the cost. They didn't have to pay anything. And then we were going to take the attorney's fees, which was the hourly rate that had been negotiated by us separately with Bechtel and URS. Judge Shea looked at all those factors, including public policy, and said that he thought that was a reasonable way to go and ordered us to distribute the money in that manner, which we did. The only thing that's left to distribute from my standpoint, I think, is the $104,000 that the judge asked us subtracted from our Lodestar amount. All of that sounds to me as though it's totally outside the agreement that we've been parsing. Well, Your Honor, I respect that. That's a whole bunch of new figures. You say, well, this sounds reasonable, and Ed Shea signs off on it. But that doesn't sound to me as though it's coming out of the language that we've been parsing. Well, that was the agreement between us and our relators, and that's the way they all understood it when the case was finished. Now, that was the agreement that you arrived at in the language you've been working on, or that's an agreement you entered into later? What am I supposed to be construing, some agreement that I don't have in front of me? No, they're in front of you, Your Honor. Your Honor, the agreement that I'm referring to right now is a supplemental agreement, which is attached to number 19. It's Donna Bushy's signed by Mr. Brunson, which says, in paragraph 2, by my signature below, Gary Brunson, Donna Bushy, Walter Thomas Situs, agree to an equal division, one-third, one-third, one-third, of any settlement, judgment, claim, or payment related to the requisition described herein, less attorney's fees and case expenses, which, as described in paragraph 2 and 3 of the original agreement, are deducted prior to the division of any settlement, judgment, claim, or payment. So it's a second document that was executed in February of 2013, after all three clients had separately contracted with us with the contract that Your Honor is reading, and it further described what I believe to be the understanding of the language that you found so disagreeable. I didn't find it disagreeable. I just found it had a different meaning from what you suggested. Yeah. The way that it's written, and, you know, I'm an engineer by education, so maybe I'm not as good a draftsman as I should be, but the way it reads from what I think is is that the gross amount of the settlement would be $29 million. A third of that would mean $9,600,000 of any amount prior to any deduction of costs, and expenses, as outlined here and above, in the amount of attorney's fees awarded by the court, whichever is greater. In other words, either the cost or the attorney's fees, whichever is greater. What I'm asking is that Judge Shea's ruling, in two instances, where he indicated that the contract itself read in a way which was a little confusing to him, but taken in context in terms of the one-third attorney's fees and the cost and attorney's fees provisions being separately negotiated by our firm with the government, that that, all taken together, should lead to our receiving the attorney's fees portion of that supplemental agreement or the statutory fee award. And that was less than the way I calculated it. Ours gave the client one point, or three point, I'm sorry, 5.1-something million, and he said 5.5. We said, that sounds fine. We distributed the money years ago, and we've had $2 million-plus wrapped up for a long time. It's also disturbing to me, and I know my time's way over, that this whole thing arose in the context of Mr. Guyer advising his client that we'd done a bad job, that he had, in Ms. Bushy's declaration, you'll see, had some disagreement with her over a fee after the fee had been awarded and before distribution, and then also that he, Mr. Guyer, had misrepresented things to Mr. I'm sorry, Mr. Brunson had misrepresented things to both Walter Tomasinus and Donna Bushy, my other two clients, in the process of the negotiations in a period of one month in November when we were trying to put this very complex case together. Okay, thank you. Thank you, Your Honor. Mr. Guyer, you saved nine seconds. Ms. Marsh, would you put a couple of minutes on the clock, please? Thank you so much. You know, it amazes me that we have all of this discussion all over the board, so many things external to the contract. Bad Guyer is a bad man, and he created all of this problem. Oh, we work so hard in these cases. We work with the government all the time. Mr. Guyer, you've only got two minutes. Why don't you tell me how much you think should be paid to the Lambert firm? The Lambert firm should get only the contingency amount. Okay, good. Tell me how you calculate that. What does it include? That's one-third of what? It's one-third of the $25 million. One-third of $25 million. So they get a .3. And the $4 million just goes to your clients? Well, the $4 million goes to all three of the clients. So it's, well, it's $3.8 million. Why isn't the $4 million covered by the first sentence, the first part of paragraph 2? It is part of the gross amount of any settlement judgment claim and or payment received by attorneys on behalf of clients. That would be the alternative view, and that was what Ms. Jeffcott's view was. But it's inconsistent with the law of this circuit. The law of this circuit says that if the lawyer is going to get both the contingency fee and the statutory fee. Why isn't it just part of a contract? You agreed that whatever good work the Lambert firm did on behalf of your clients, they would get one-third of the settlement. Why isn't that $4 million from Bechtel and $25 million that came from the settlement that the government got? That's $29 million, one-third of $29 million, 9.66. Why isn't that just easy? It is easy. It's just that it wouldn't be consistent with the law. Well, the law. The law is going to tell us that the parties can't contract for fees? No, the law would say that the parties can contract for fees. Okay, so then we just need to look at the contract. Why isn't the reading of the contract that I've just given you a very reasonable reading of the contract? The $4 million is part of the settlement. So we add it to the 25 and then apply the 33 percent. I agree. I agree that it is a reasonable reading of the contract, but it's not what the contract says, and it's inconsistent with the law of the circuit. What does the contract say? Because it seems to me that Judge Bybee's reading is the one that makes sense. You get $29 million, and the Lambert firm gets a third. The Lambert firm would get a third of the $4 million. Right. It's part of the money that was obtained. It's part of the settlement that was obtained from Bechtel. Right, and that the clients would get two-thirds of the ---- Yeah, sure. Yeah. Which is what Ms. ---- That's what they agreed to. That's what Ms. Jeffcott says. I don't think that that's what the agreement says. But I do ---- I don't see how you'd get to anything other than that. I mean, both of you have this really convoluted reading of this, and I've tried to give you a simple reading that's someplace in the middle between your reading and Mr. Lambert's reading. Well, I want to say this, that the law of the circuit says that if a lawyer is going to get both contingent and statutory fees ---- It's not a statutory fee. Where's the statutory fee? It is a statutory fee, Your Honor. No, it's not a statutory fee. The $4 million was the settlement. That's not a statutory fee. It's a statutory fee. It was a reserved, specifically reserved by the United States government as a statutory fee. The judge, the district court, undertook it as a statutory fee. The district court found that the statutory fee was actually excessive and ordered the Lambert firm to give Bechtel back $108,000. The district court adopted that fee as a statutory fee. Now, this would be a very slippery slope to go down for the court to be able to say that any attorney fee provision that calls a statutory fee awarded by the court, just because it is settled, that it therefore is not covered as a statutory fee under a retainer, this would wreak havoc in the civil rights field. Okay. It's a statutory fee no matter how you do it. Thank you. Can I say one last thing, Your Honor, just please, just one last thing? These ---- it's not just my client. It's both of those other clients are also entitled to that. They should be remanded to the district court. They should be told that they could have that and then see whether or not they want what is legally theirs. Thank you. Okay. Thank you. Jarndyce v. Jarndyce is submitted. United States, Exwell Brunson v. Bechtel, submitted. Thank you both. Next and last, Alaska pretrial detainees for the end of unwarranted courtroom shackling v. Johnson and Monaghan.
judges: W. Fletcher, Bybee, Watford